**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN FORTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No.    6:17-CV-0264 (FJS/ATB) |
| v. | ) |
| | ) CLASS ACTION |
| DIRECT ENERGY SERVICES, LLC, a | ) |
| Delaware Limited Liability Company, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |
| | ) |

**<u>Class Action Complaint</u>**

Plaintiff brings this consumer protection class action in his individual capacity, and on behalf of a class of persons defined below, against Direct Energy Services, LLC ("Defendant," "DES," or the "Company"), and hereby alleges the following with knowledge as to his own acts, and upon information and belief as to all other acts:

**INTRODUCTION**

1.     For decades, the prices paid by consumers for their electricity and gas were strictly regulated. However, in 1996, the New York legislature opened New York's energy market to "competition," whereby consumers could choose from a variety of companies selling residential energy in addition to traditional utilities like Consolidated Edison. Taking advantage of the deregulation in New York and other states, companies like Defendant (called energy services companies, or "ESCOs") jumped into the market and began to grow rapidly.

2.     Defendant has fueled its rapid expansion not by providing a good service for a fair price, but rather by developing and using deceptive and unlawful marketing and sales practices that often result in its energy customers paying far more than they would have paid had they stayed with their traditional energy suppliers. And regardless of any savings, or lack thereof,

DES fails to conspicuously disclose its variable rate pricing structure, in violation of New York law. DES advertises low, temporary fixed rates, and then buries the long-term variable rate pricing structure in the fine print of a dense contract without any highlighting or call to attention.

3.      These deceptive practices violate New York's Energy Services Consumers Bill of Rights, N.Y. Gen. Bus. Law § 349-d (the "ESCO Bill of Rights" or "Section 349-d"), which mandates that all ESCO contracts and all ESCO marketing materials clearly and conspicuously identify all variable charges included as part of an energy plan; and New York's consumer protection law, N.Y. Gen. Bus. Law § 349 ("Section 349"), which prohibits deceptive conduct in consumer transactions.

4.      DES's deceptive enrollment and energy sales practices violate New York law in multiple ways, including:

        a.      Violating Section 349-d.7. by failing to clearly and conspicuously disclose in both its contracts and in all marketing materials that DES charges variable rates, and that its fixed-rate plans automatically switch to a variable-rate plan upon the expiration of the initial term;

        b.      Violating Section 349 and Section 349-d.3 by failing to adequately inform consumers that after the expiration of the initial teaser rate DES's variable rates (and thus consumers' energy costs) can quickly rise; and

        c.      Violating Section 349 and Section 349-d.3 by deceptively highlighting consumers' potential savings while neglecting to mention that any such savings could be quickly erased by a subsequent jump in energy prices when the initial teaser rate switched to a variable rate.

5.      Plaintiff brings this action on behalf of himself and a Class of DES customers

similarly harmed and described below. Plaintiff seeks, *inter alia*, actual damages, statutory damages, treble damages up to ten thousand dollars for each class member, injunctive and declaratory relief, and attorneys' fees and costs.

6.      A class action is the only way the Company's customers can remedy DES's ongoing wrongdoing. The loss suffered by each DES customer is small compared to the cost of trying to challenge DES's unlawful practices. It is thus untenable for each individual consumer to bring his or her own lawsuit. In addition, many customers may not even realize they are victims of DES's deceptive conduct.

7.      With this class action, Plaintiff and the Class seek to ensure that DES engages in forthright and non-deceptive business practices. Plaintiff therefore seeks equitable relief in addition to monetary damages. Plaintiff asks that the Court declare Defendant's business practices impermissible, and enjoin Defendant from continuing its dishonest practices.

## PARTIES

8.      **Plaintiff Martin Forte** is a citizen of New York residing in Utica, New York.

9.      **Defendant Direct Energy Services, LLC** is a Delaware limited liability company with its principal place of business at 12 Greenway Plaza Suite 250, Houston, Texas.

10.     Defendant DES was founded in Toronto, Ontario in 1986 and has become one of the largest ESCOs in the United States, now serving nearly 5 million electric and natural gas customers across its North American operations. DES sells electricity or natural gas in New York, eighteen other states, and the District of Columbia.

11.     DES is a wholly-owned subsidiary of Centrica plc, a British multinational utility company headquartered in Windsor, Berkshire, United Kingdom.

## JURISDICTION AND VENUE

**A.** **Subject Matter Jurisdiction**

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 (the "Class Action Fairness Act").

13.     This action meets the prerequisites of the Class Action Fairness Act, because the claims of the Class defined below exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

**B.** **Personal Jurisdiction**

14.     This Court has general personal jurisdiction over Defendant DES because DES has been doing business in New York through continuous, permanent, and substantial activity in New York.

15.     This Court has specific personal jurisdiction over Defendant DES because it maintains sufficient minimum contacts in this jurisdiction through the advertising, marketing, and sale of electricity and natural gas to New York consumers.

**C.** **Venue**

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). Substantial acts in furtherance of the alleged improper conduct occurred within this District and Plaintiff Forte resides within this District.

## FACTUAL ALLEGATIONS

**A.** **New York's Energy Markets**

17.     In 1996, New York deregulated the sale of retail gas and electricity, allowing New York consumers to purchase natural gas and electricity through third-party suppliers while

4

continuing to receive delivery of the energy from their existing utilities. More than a million New York consumers have switched to an ESCO since New York opened its retail gas and electric markets to competition.

18.    ESCOs are subject to minimal regulation by New York's utility regulator, the New York State Public Service Commission ("NYPSC"). ESCOs like DES do not have to file their rates with NYPSC, or the method by which their rates are set.

19.    If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility (in the New York metropolitan area, typically Consolidated Edison). The customer's existing utility continues to bill the customer for both the energy supply and delivery costs. The only difference to the customer is which company sets the price for the customer's energy supply.

20.    After a customer switches to an ESCO, the customer's energy supply charge— based either on a customer's kilowatt hour (for electricity) or therm (for gas) usage—is calculated using the supply rate charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate charged is itemized on the customer's bill as the number of kilowatt hours ("kWh") or therms multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 x $.11) for his or her energy supply.

21.    In 2009, the New York Legislature passed a crucial safeguard to protect New York's residential energy consumers from deceptive and predatory practices by ESCOs: the ESCO Bill of Rights. Among the consumer protections in the ESCO Bill of Rights, Section 349-d.3. prohibits deceptive acts or practices in the marketing of energy services, while Section 349-d.7. requires that "[i]n every contract for energy services and in all marketing materials provided

to prospective purchasers of such contracts, all variable charges shall be *clearly and conspicuously* identified" (emphasis added).

22.    DES's practices violate Section 349-d and further violate Section 349's general prohibition on deceptive acts or practices in the conduct of any business or trade, or in the furnishing of any service.

### B.    DES's Deceptive Conduct

23.    DES claims that its "fixed New York electricity rates give you freedom from seasonal price fluctuations imposed by your utility," but it fails to adequately inform consumers who switch that once their low "teaser" rate expires their energy rates can skyrocket.

24.    Once the initial low rate expires, DES customers' plans automatically switch to a variable rate plan. DES's variable energy rates can rise rapidly and have no upper limit.

25.    DES conceals this fact with a marketing campaign that promises consumers savings and entices them with free smart thermostats, rewards points, and other incentives to switch, while failing to adequately inform consumers that their plan will ultimately switch to DES's variable rate plans, and that these variable rates can rapidly rise:

### Why You Should Switch to Direct Energy:

- Our Live Brighter Plans lock in a specific New York electricity rate the entire contract term.
- Big rewards! Our Plenti program allows you to earn 1,000 points when signing up and more each month on your eligible energy supply charges.
- Our fixed New York electricity rates give you freedom from seasonal price fluctuations imposed by your utility program.
- We give you a variety of contract options so that you can choose the term that makes sense for your life.

- Thanks to deregulation, you have the power to choose the New York electricity supplier that fits your lifestyle the best!
- Switching to Direct Energy is easy, convenient, and secure, whether you order online or over the phone.
- You'll never experience any change in your power during the switch to us.
- You'll continue to be billed by your current New York utility company.



26.    DES's variable rate plans limit the Company's exposure to energy price fluctuations and shift the risk of volatile commodity prices onto consumers. DES does not bother to inform consumers of these facts when it promotes how consumers who switch will save on their monthly energy bills.

27.    While DES highlights potential savings, it deceptively fails to clearly and conspicuously mention that DES's variable rates can precipitously rise. DES fails to: a) adequately inform consumers that a variable rate plan can result in large increases in monthly energy bills when energy prices rise; and b) clearly and conspicuously describe the factors that can cause consumers' energy costs to rise.

28.    The terms of a consumer's relationship with DES are memorialized in the New York Residential & Small Commercial Terms and Conditions (the "Agreement"),[1] which is only visible by clicking a link from the final section of the page to enroll with DES:

---

[1] A true copy of the Terms and Conditions visible to consumers during DES's online sign-up process as of December 2016 is attached hereto as Exhibit A.



29.     The Agreement utterly fails to meet the requirement of Section 349-d.7 that

variable energy rates be clearly and conspicuously disclosed in a contract for energy services.

The Agreement provides the following disclosure regarding DES's variable rates:

> After the Initial Term and during the Renewal Period, Direct Energy will charge
> you at a variable price per kWh based upon generally prevailing market prices for
> electricity in the LDU load zone for the applicable period, plus an adder,
> determined solely by Direct Energy in its discretion. Your variable price will
> include ancillary charges, cost of capacity, generation, line losses, New York City
> Utility Tax (when applicable), and other miscellaneous charges.

The reference to variable charges is buried without highlighting or other emphasis amid the

Contract's sea of confusing fine print (highlighting added):



**NEW YORK RESIDENTIAL & SMALL COMMERCIAL TERMS AND CONDITIONS**
Electricity Supply Service
Direct Energy Services, LLC

30.     Even for those customers who read and understand the terms of the Agreement, the Agreement is still entirely unclear as to how a customer would determine what he or she would pay under a variable plan: while the Agreement mentions "generally prevailing market prices for electricity," it offers no suggestion of where a consumer might be able to see those prices before being billed. More important, the Agreement also references an "adder, determined solely by Direct Energy in its discretion." So a consumer truly has no way to determine what his or her variable rate would be; DES states that it can charge whatever it wants. This is hardly the clear and conspicuous disclosure of variable charges mandated by the ESCO Consumers Bill of

Rights.

31.    Through its conduct, DES has violated both the spirit and letter of Section 349-d, the law that is explicitly designed to protect energy consumers and allow them to make informed choices when deciding whether to switch to an ESCO.

        **C.**    **Plaintiff Forte's Experience**

32.    Plaintiff Forte switched to DES to supply his electricity in December 2014.

33.    DES sent Plaintiff a welcome letter dated December 22, 2014 (the "Welcome Letter"), which included DES's Terms and Conditions.

34.    Page 6 of the Welcome Letter spells out that Plaintiff would pay a fixed price of $0.07890/KWH for the first year of service with DES. The ninth row on page 6 of the Welcome Letter also states: "*We will send you a renewal notice between 30 and 60 days prior to the end of your Initial Term. This Agreement shall automatically renew for successive month-to-month periods at our standard variable rate plan as per the price applicable to the Terms and Conditions.*"[2]

35.    Thus, Forte's fixed rate electricity supply plan with DES automatically converts to a variable rate without any action required by Forte. And just as with the sign-up process, DES does not state clearly or simply all variable charges or fees that Forte will automatically be charged after twelve months. Instead, just as with the sign-up process, DES refers to its Terms and Conditions. Page 3 of the Welcome Letter contains that relevant Terms and Conditions and states, in relevant part, as follows:

> **6. __Price: the Rate and Daily Fee.__** During the Initial Term, your rate per kWh will be as set forth on the Customer Disclosure Statement. . . . For variable rate, each month will reflect the cost of electricity, including energy, capacity, settlement,

---

[2] A true copy of the December 22, 2014 Welcome Letter—including the Terms and Conditions DES sent to Plaintiff—is attached hereto as Exhibit B.

ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expenses and margins. You may also be charged a flat daily fee, which you will find in the Customer Disclosure Statement. After the Initial Term and during the Renewal Term, your rate per kWh, as well as the daily fee, will both be variable, and will not change more than once each monthly billing cycle, unless we send advance written notice indicating otherwise. Each will change as we solely determine based on business and market conditions, and will not increase more than 40% over the rate for previous monthly billing cycle.



**NEW YORK RESIDENTIAL & SMALL COMMERCIAL TERMS AND CONDITIONS**
Electricity Supply Service
Direct Energy Services, LLC

Direct Energy Services, LLC ~ Toll-Free Phone: 1-866-348-4194
www.directenergy.com ~ csdirectenergy@directenergy.com

**1.** **Terms of Service.** These Terms and Conditions together with the Customer Disclosure Statement (defined below), when is incorporated herein by reference, constitute the agreement ("Agreement") between you and Direct Energy Services, LLC ("Direct Energy"). "Customer Disclosure Statement" means, as applicable, either the section of the enrollment consent form/letter of authorization entitled "Customer Disclosure Statement" or the Schedule A accompanying these Terms and Conditions entitled "Customer Disclosure Statement – Schedule A to Terms and Conditions".

**2.** **Agreement to Purchase Energy.** We will supply your retail electricity, as delivered to you by your Local Distribution Utility ("LDU"), subject to the terms and conditions of this Agreement.

**3.** **Agency.** You appoint us as your agent to provide retail electric service, including the electric transportation, transmission and related services appropriate to provide that service to you.

**4.** **Eligibility.** For electric service, you must (a) be eligible to receive service from your LDU and stay eligible for such service during the Term of this Agreement and (b) meet all eligibility requirements to enable Direct Energy to provide electric service. We can terminate this Agreement by giving you notice if you are not eligible. For the Comfort & Control Plan, you must meet the eligibility requirements set forth in Section 8.

**5.** **Term of Agreement.** The "Initial Term" of your service can be found on the Customer Disclosure Statement. The Initial Term will continue for the number of monthly billing cycles as indicated on the Customer Disclosure Statement. Thereafter, you will be notified in advance that this Agreement will automatically renew on a month-to-month basis at the same terms, unless Direct Energy sends you written notice of proposed changes to such terms in advance of the renewal date (each such renewal are collectively referred to as the "Renewal Term"). Any such written notice will be sent at least 30 days and no more than 60 days prior to the renewal date, apprising you of any proposed changes in the terms and conditions of this Agreement and of the your right to renew, terminate or renegotiate this Agreement. If you wish to reject the renewal of this Agreement without incurring an early cancellation fee, if any, you will have three (3) business days from the day you receive the first billing statement of your Renewal Term to cancel by calling us as detailed in Section 24. When receiving service on a month-to-month basis, you may provide written notice of termination or call us as detailed in Section 24 or call their delivery company to terminate the agreement. We may terminate this Agreement by providing 30 days' written notice to you.

**6.** **Price: the Rate and Daily Fee.** During the Initial Term, your rate per kWh will be as set forth on the Customer Disclosure Statement. For a fixed rate, your rate per kWh excludes: (a) transmission, transportation, capacity and ancillary service charges; (b) fees, charges and other assessments imposed by your LDU, the New York Public Service Commission (including the New York Department of Public Service, the "NYPSC") or other governmental agency; and (c) federal, state and local taxes. These items are in addition to your per kWh rate. For variable rate, each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expenses and margins. You may also be charged a flat daily fee, which you will find in the Customer Disclosure Statement. After the Initial Term and during the Renewal Term, your rate per kWh, as well as the daily fee, will both be variable, and will not change more than once each monthly billing cycle, unless we send advance written notice indicating otherwise. Each will change as we solely determine based on business and market conditions, and will not increase more than 40% over the rate for the previous monthly billing cycle. Your rate per kWh excludes: (a) transmission, transportation, capacity and ancillary service charges; (b)

fees, charges and other assessments imposed by your LDU, the New York Public Service Commission (including the New York Department of Public Service, the "NYPSC") or other governmental agency, and (c) federal, state and local taxes. These items are in addition to your per kWh rate. If you are a tax-exempt customer, you must provide us with an appropriate exemption certificate before we will waive any assessment and collection of taxes. The amount you pay may change for reasons allowed by law, including, without limitation (a) a change in charges, or new charges, imposed by your LDU, NYPSC or other government agency, or (b) we determine that the service plan originally designated is incorrect.

**7.** **Renewable Energy Certificate Plan.** If you are purchasing a Renewable Energy Certificate Plan, in addition to receiving your retail electricity supply from us, we will purchase and retire Renewable Energy Certificates ("RECs") to offset 100% of your electricity usage, as determined by your LDU under this Agreement. Our Renewable Wind Energy Product combines locally generated electricity with national RECs generated from 100% wind energy. Our RECs are generated by wind farms in Texas. One (1) REC is equal to one (1) megawatt-hour of electricity generated from an eligible renewable energy source.

**8a.** **Comfort & Control Plan.** If you are purchasing our Comfort & Control Plan pursuant to this Agreement, you are agreeing to purchase from Direct Energy a product that includes retail electric supply and at least one (1) but no more than (3) NEST Learning Thermostats. You may request up to three (3) NEST Learning Thermostats; however, Direct Energy may limit the number of NEST Learning Thermostats provided to you in its sole discretion. To be eligible to enroll in the Comfort & Control Plan you (i) must reside in a single family home and (ii) have high speed internet service (dial up and mobile internet access is not compatible). The NEST Learning Thermostat works with a significant majority (but not all) of the heating and cooling systems in the market You may check the compatibility of the NEST Learning Thermostat with your heating and/or cooling system at the following website http://support.nest.com/. If you cancel this Agreement after the Rescission Period (as defined in Section 10) but within the Initial Term, then you will be required to pay us a device cost recovery fee in the amount set forth in the Customer Disclosure Statement per NEST Learning Thermostat. You cannot return the NEST Learning Thermostat(s) to avoid the device cost recovery fee(s).

**8b.** **Back to Business Plan.** If you are purchasing our Back to Business Plan pursuant to this Agreement, you are agreeing to purchase from Direct Energy a product that includes electricity service and at least one (1) but no more than (3) NEST Learning Thermostats. You may request up to three (3) NEST Learning Thermostats; however, Direct Energy may limit the number of NEST Learning Thermostats provided to you in its sole discretion. To be eligible to enroll in the Back to Business Plan, you must have high speed internet service (Dial up and mobile internet access is not compatible). The NEST Learning Thermostat works with a significant majority (but not all) of the heating and cooling systems in the market. You may check the compatibility of the NEST Learning Thermostat with your heating and/or cooling system at the following website http://support.nest.com/. If you cancel this Agreement after the Rescission Period (as defined in Section 11) but within the Initial Term (as defined in Section 6), then you will be required to pay us a device cost recovery fee in the amount set forth in the Rate Plan Summary per NEST Learning Thermostat.

**9.** **Billing.** Our electric service, daily fee, and other charges will appear in your service bill from your LDU. Your LDU calculates and determines your usage and charges. Your LDU bills will specify where payments are due, and you agree to pay your bill as required by your LDU. Your payments may be pre-paid in accordance with procedures adopted by the NYPSC. Additionally, if your LDU is Central Hudson, you may be offered a billing cycle ending either monthly or every other month. If you receive residential service, your LDU may offer budget, levelized, or other payment plans, as provided in New York's Home Energy Fair Practices Act ("HEFPA"). The LDU's measurement of electricity will be definitive for

NYTCRSCE - 082614

36.    This disclosure is not clear or simple, and it does not clearly and conspicuously identify all variable charges, as required by law. Also, the Customer Disclosure Statement (page 6 of the Welcome Letter) does not include the "flat daily fee" mentioned.

37.    In addition, the Terms and Conditions demonstrate the willfulness of DES's conduct. Contrast "[d]uring the Initial Term, your rate per kWh will be as set forth on the Customer Disclosure Statement" with the long, winding quoted language starting with "[f]or variable rate." The Initial Rate language is clear and simple while the variable rate language essentially states, "DES will charge whatever it chooses." DES demonstrably knows how to draft Terms and Conditions that are clear and simple, but chooses not to use clear and simple language for variable rate customers.

38.    Furthermore, Plaintiff did not receive a renewal notice at least thirty days prior to the contract renewal date that clearly, simply, or conspicuously identified all variable charges.

39.    None of the materials DES provided Plaintiff—from marketing materials to sign-up materials to post-sign-up materials—clearly, simply, or conspicuously identified all variable charges.

40.    As a result of DES's conduct, Plaintiff was injured because he paid more for DES's variable rate electricity supply than he would have from an alternative energy supplier.

**CLASS ACTION ALLEGATIONS**

41.    Plaintiff sues on his own behalf and on behalf of a Class for damages and injunctive relief under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

42.    The Class is preliminarily defined as follows:

> All Direct Energy Services variable rate energy customers in New York from the date three years prior to the date of the filing this action to the date of Class Certification of this action (the "Class").

43.     Excluded from the Class are the officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and its legal representatives, heirs, successors or assigns and any entity in which Defendant has or has had a controlling interest. Also excluded are all federal, state and local government entities; and any judge, justice or judicial officer presiding over this action and the members of their immediate families and judicial staff.

44.     Plaintiff does not know the exact size of the Class because such information is in the exclusive control of Defendant. Plaintiff believes, however, that based on the number of DES customers, the Class encompasses thousands of individuals whose identities can be readily ascertained from Defendant's records. Accordingly, the members of the Class are so numerous that the joinder of all such persons is impracticable.

45.     Plaintiff is an adequate class representative. His claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and members of the Class were subject to the same or similar conduct by Defendant. Further, Plaintiff and the Class sustained substantially the same injuries and damages arising out of Defendant's conduct.

46.     Plaintiff will fairly and adequately protect the interests of all Class members. Plaintiff has retained competent attorneys experienced in the prosecution of class actions to represent his interests and those of the Class.

47.     The questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and a class action will generate common answers which are apt to drive the resolution of this action. These common questions of law and fact include, without limitation:

a.    Whether Defendant's conduct violates Section 349-d;

b.    Whether Defendant' s conduct violates Section 349;

c.    Whether Defendant was unjustly enriched as a result of its conduct;

d.    Whether the Class members have been injured by Defendant's conduct;

e.    Whether, and to what extent, Defendant should be enjoined to prevent it from continuing its unlawful practices; and

f.    The extent of class-wide injury and the measure of damages for those injuries.

48.    A class action is superior to other methods for resolving this controversy because:

a.    the prosecution of separate actions by Class members creates a risk of adjudications with respect to individual Class members that would be dispositive of the interests of other Class members not parties to that action, or substantially impair or impede their ability to protect their interests;

b.    the prosecution of separate actions by Class members creates a risk of inconsistent or varying adjudications, which would establish inconsistent standards for Defendant's conduct;

c.    Defendant's wrongful conduct is generally applicable to all Class members; and

d.    there will be no difficulty in managing this action as a class action.

49.    Accordingly, this action satisfies the requirements set forth under Federal Rules of Civil Procedure 23(a) and 23(b).

## COUNT I
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349-d.7

50.    Plaintiff incorporates by reference the allegations contained in the preceding

paragraphs as if fully set forth herein.

51.    Plaintiff brings this claim under Section 349-d.7 on his own behalf and on behalf of the members of the Class.

52.    Section 349-d.7 provides that "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be clearly and conspicuously identified."

53.    None of Defendant's marketing materials adequately disclose that DES charges a variable rate in a clear and conspicuous manner. Indeed, the marketing materials created by DES and distributed to Plaintiff and prospective customers make no reference at all to the fact that DES's rates are variable, and similarly fail to provide a clear and conspicuous explanation of the factors affecting DES's variable rates.

54.    The contracts Defendant provided to customers likewise fail to clearly and conspicuously inform consumers about DES's variable energy rates or the factors affecting DES's variable rates.

55.    Through its conduct described above, Defendant has violated Section 349-d.7 and caused financial injury to Plaintiff and DES's other variable rate customers by causing Plaintiff and Class members to pay more for electricity than they would have had they stayed with their previous energy supplier or chosen a different energy supplier.

56.    Because the Agreement violates Section 349-d.7, it is void and unenforceable as contrary to New York's public policy under Section 349-d.8. Any purported waiver by Plaintiff of the rights afforded by Section 349-d is similarly void and unenforceable by DES. N.Y. Gen. Bus. Law § 349-d.8.

57.    Section 349-d.10 also provides that

any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

58.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered injury and were damaged in an amount to be determined at trial, but in any case not less than $500 for each violation.

59.    As shown above, Defendant willfully or knowingly violated Section 349-d.

60.    Because Defendant's violations of Section 349-d have damaged Plaintiff and the Class, and Defendant's continued violations threaten additional injury for which Plaintiff and the Class have no adequate remedy at law, Plaintiff seeks an order pursuant to Section 349-d enjoining Defendants from such future conduct.

61.    Pursuant to Section 349-d, Plaintiff seeks actual, statutory, and treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

## COUNT II
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349-d.3

62.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

63.    Plaintiff brings this claim on his own behalf and on behalf of the members of the Class.

64.    Section 349-d.3 requires that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

65.    Defendant offers for sale energy services for and on behalf of an ESCO.

66.    Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of Section 349-d.3 by (a) emphasizing the potential savings from switching to DES while neglecting to mention that any brief savings would be quickly erased by a substantial increase in energy prices, and (b) failing to adequately inform consumers that their energy costs can precipitously rise with DES's variable rate plans.

67.    Through its conduct described above, Defendant has violated Section 349-d.3 and caused financial injury to Plaintiff and DES's other variable rate customers by causing Plaintiff and Class members to pay more for electricity than they would have had they stayed with their previous energy supplier or chosen a different energy supplier.

68.    This conduct is willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

69.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered injury and were damaged in an amount to be determined at trial, but in any case not less than $500 for each violation.

70.    Defendant willfully or knowingly violated Section 349-d.

71.    Because Defendant's violations of Section 349-d have damaged Plaintiff and the Class, and Defendant's continued violations threaten additional injury for which Plaintiff and the Class have no adequate remedy at law, Plaintiff seeks an order pursuant to Section 349-d enjoining Defendants from such future conduct.

72.    Pursuant to Section 349-d, Plaintiff seeks actual, statutory, and treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

**COUNT III**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

73.     Plaintiff incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff brings this claim on his own behalf and on behalf of the members of the Class.

75.     Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of Section 349 by (a) emphasizing the potential savings from switching to DES while neglecting to mention that any brief savings would be quickly erased by a substantial increase in energy prices, and (b) failing to adequately inform consumers that their energy costs can precipitously rise with DES's variable rate plans.

76.     Through its conduct described above, Defendant has violated Section 349 and caused financial injury to Plaintiff and DES's other variable rate customers by causing Plaintiff and Class members to pay more for electricity than they would have had they stayed with their previous energy supplier or chosen a different energy supplier.

77.     Defendant's conduct is unfair, unconscionable, willful, and contrary to the public policy of New York, which aims to protect consumers.

78.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered injury and were damaged in an amount to be determined at trial, but in any case not less than $50 for each violation.

79.     Defendant willfully or knowingly violated Section 349.

80.     Because Defendant's violations of Section 349 have damaged Plaintiff and the Class, and Defendant's continued violations threaten additional injury for which Plaintiff and the

Class have no adequate remedy at law, Plaintiff seeks an order pursuant to Section 349(h) enjoining Defendants from such future conduct.

81.    Pursuant to Section 349, Plaintiff seeks actual, statutory, and treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

**COUNT IV**
**UNJUST ENRICHMENT**

82.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Common law prohibits breaches of contract, including breach of a contract implied under the circumstances of a relationship between parties, where such breach results in the unjust and inequitable enrichment of one party at the expense of another.

84.    Common law prohibits one party's possession of money that belongs to another and that, in the absence of an agreement, and in equity and good conscience, the party possessing such money ought not retain.

85.    Through the deceptive, unlawful, and unfair conduct alleged in this Complaint, Defendant has been enriched by (a) emphasizing the potential savings from switching to DES while neglecting to mention that any brief savings would be quickly erased by a substantial increase in energy prices, and (b) failing to adequately inform consumers that their energy costs can precipitously rise with DES's variable rate plans.

86.    Defendant has benefited from its deceptive, unlawful, and unfair conduct. Defendant has retained these benefits that rightfully belong to Plaintiff and the Class.

87.    Defendant's retention of those benefits constitutes its unjust enrichment at the expense of Plaintiff and the Class.

88.    Defendant appreciates and has knowledge of such benefits.

89.     Under principles of equity and good conscience, Defendant should not be permitted to retain the revenue that they acquired by virtue of their unlawful conduct. All funds, revenue, and benefits received by Defendant rightfully belong to Plaintiff and the Class, which Defendant has unjustly received as a result of its actions.

90.     Plaintiff and the Class have no adequate remedy at law.

91.     As a result of Defendant's wrongful retention of benefits to which Plaintiff and the Class are entitled, Plaintiff and the Class have suffered substantial damages and losses and are entitled to recover benefits wrongfully retained by Defendant and such other relief as this Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Forte respectfully requests that the Court:

a.     Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating the undersigned firm as Class Counsel;

b.     Find that Defendant has committed the violations of law alleged herein;

c.     Enter an order granting monetary relief pursuant to Section 349-d on behalf of the Class;

d.     Enter an order granting monetary relief pursuant to Section 349 on behalf of the Class;

e.     Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

f.     Render an award of compensatory damages of at least $5,000,000, the precise amount of which is to be determined at trial;

g.      Issue an injunction or other appropriate equitable relief preventing

Defendant from engaging in the deceptive practices alleged herein;

h.      Render an award of treble damages;

i.      Enter judgment including interest, costs, reasonable attorneys' fees, costs,

and expenses; and

j.      Grant all such other relief as the Court deems appropriate.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: March 6, 2017                              Respectfully submitted,


                                                  KamberLaw, LLC

                                                  By:
                                                        s/ Adam C. York
                                                  _____
                                                  One of the attorneys for Plaintiff, individually and
                                                  on behalf of a class of similarly situated individuals

Adam C. York (Bar Number: 520506)
Michael Aschenbrener (*pro hac vice application to be filed*)
KamberLaw, LLC
220 N Green St
Chicago, Illinois 60607
Telephone:  (212) 920-3072
Facsimile:  (212) 202-6364
ayork@kamberlaw.com
masch@kamberlaw.com