| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF NEW YORK | U.S. DISTRICT COURT – N.D. OF N.Y.<br>**FILED**<br>**Dec 29 - 2021**<br>John M. Domurad, Clerk |

MARTIN FORTE,

                            **Plaintiff,**

   -and-

THOMAS AURELIA; JERRY BAGLIONE;
and RICHARD SCHAFER,

                         **Intervenor-Plaintiffs,**

                    v.                                6:17-CV-264<br>                                                           (FJS/ATB)

DIRECT ENERGY SERVICES, LLC,
a Delaware Limited Liability Company,

                            **Defendant.**

| APPEARANCES[1] | OF COUNSEL |
|---|---|
| **KAMBERLAW, LLC**<br>220 North Green Street<br>Chicago, Illinois 60607<br>     -and-<br>201 Milwaukee Street<br>Suite 200<br>Denver, Colorado 80206<br>Attorneys for Plaintiff and<br>Intervenor-Plaintiffs | **ADAM C. YORK, ESQ.**<br>**MICHAEL J. ASCHENBRENER, ESQ.**<br>**SCOTT A. KAMBER, ESQ.** |
| **STEELMAN, GAUNT &**<br>**HORSEFIELD**<br>901 North Pine Street, Suite 110<br>P.O. Box 1257<br>Rolla, Missouri 65402<br>Attorneys for Plaintiff and<br>Intervenor-Plaintiffs | **DAVID LLOYD STEELMAN, ESQ.** |

---

[1] The Court reminds counsel that, pursuant to Local Rule 83.1(f), "[e]very attorney must update the information contained in their bar record within 14 days of a change. . . . Failure to keep this information current will result in removal from the roll of the Court."  L.R. 83.1(f).

| | |
|---|---|
| **MCDOWELL HETHERINGTON LLP** <br> 1001 Fannin Street, Suite 2700 <br> Houston, Texas 77002 <br>      -and- <br> 1000 Ballpark Way <br> Suite 209 <br> Arlington, Texas 76011 <br> Attorneys for Defendant | **DIANE S. WIZIG, ESQ.** <br> **MICHAEL D. MATTHEWS, JR., ESQ.** <br> **JAMES MONROE CHAMBERS, ESQ.** |
| **FISHKIN LUCKS LLP** <br> One Gateway Center <br> Suite 1150 <br> Newark, New Jersey 07102 <br> Attorneys for Defendant | **STEVEN M. LUCKS, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

Following New York's 1996 deregulation of its energy market, private energy services companies ("ESCOs"), like Defendant, began providing energy to consumers at rates calculated based on usage per kilowatt-hour ("kWh"). *See* Dkt. No. 18, First Amend. Compl., at ¶ 1. Plaintiff Martin Forte alleged that, after twelve months at a fixed electricity rate, Defendant automatically renewed his contract and changed his rate to a variable rate plan; and, ultimately, Defendant's electricity charges were higher than what a traditional utility, like National Grid, would have charged Plaintiff. *See id.* at ¶¶ 35-44. Plaintiff claimed that he was unaware that his rate would change from fixed to variable and that Defendant's Welcome Letter, Terms and Conditions ("Terms"), and Customer Disclosure Statements were not clear and conspicuous about that change. *See id.* at ¶ 39. Plaintiff thus commenced this action, seeking to represent a putative class, in March 2017, alleging causes of action for unjust enrichment and for violating

Section 349-d(7) of New York's General Business Law ("GBL"), which requires ESCOs to clearly and conspicuously disclose all variable charges. *See id.* at ¶¶ 54-77; *see also* Dkt. No. 1, Orig. Compl. Defendant moved to dismiss Plaintiff's first amended complaint; and, in August 2017, the Court issued a Memorandum-Decision and Order (the "August 2017 Order") dismissing Plaintiff's cause of action for unjust enrichment but maintaining his cause of action pursuant to GBL § 349-d(7).[2] *See* Dkt. Nos. 18, 24, 27.

Plaintiff eventually moved to certify a class in September 2019, *see* Dkt. No. 83; however, following that motion, the parties disputed whether Plaintiff was an adequate representative of the class and whether additional plaintiffs would be permitted to intervene as representatives, *see* Dkt. No. 90 at 4-23; Dkt. No. 95 at 2-19; *see also* Dkt. Nos. 97, 114, 115. Intervenor-Plaintiffs Thomas Aurelia, Richard Schafer, and Jerry Baglione ultimately filed their intervenor class action complaint in this action in January 2020, alleging that Defendant violated GBL § 349-d(7). *See* Dkt. No. 106. In response, Defendant answered and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) against Intervenor-Plaintiffs Schafer and Baglione. *See* Dkt. Nos. 116, 117. All three Intervenor-Plaintiffs then joined Plaintiff Forte (collectively referred to as "Plaintiffs") in a new motion for class certification. *See* Dkt. No. 121. Defendant then moved for summary judgment against all Plaintiffs, seeking to dismiss their complaints. *See* Dkt. No. 131. All of these motions are pending before the Court. *See* Dkt. Nos. 83, 117, 121, 131.

---

[2] Defendant moved for an order modifying the August 2017 Order and to certify it for interlocutory appeal to the Second Circuit pursuant to 28 U.S.C. § 1292(b). *See* Dkt. No. 38. The Court denied that motion in March 2019. *See* Dkt. No. 78.

## II. DISCUSSION

### A. Defendant's motion for summary judgment.

"A court's 'decision on the merits . . . should not ordinarily occur before or simultaneous with a decision on class certification.'" *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-CV-00458 (BKS/DJS), 2019 U.S. Dist. LEXIS 161495, *32 (N.D.N.Y. Sept. 23, 2019) (Sannes, J.) (quoting *In re Cablevision Consumer Litig.*, No. 10-cv-4992, 2014 U.S. Dist. LEXIS 44983, at *48, 2014 WL 1330546, at *15 (E.D.N.Y. Mar. 31, 2014) (quoting *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009)). "Nonetheless, there is 'nothing in Rule 23 to preclude the Court from examining the merits of plaintiffs' claim on a proper . . . Rule 56 motion simply because such a motion is returnable contemporaneously with a class action.'" *Id.* (quoting *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 87 n.1 (E.D.N.Y. 1989)); (citing *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) ("The decision to award summary judgment before acting on class certification [is] well within the discretion of the district court.")). Therefore, the Court first addresses Defendant's motion for summary judgment before considering whether it is appropriate to certify the proposed class.

### 1. *Summary judgment standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant may satisfy this burden "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater*

*v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

Once the movant meets this initial burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322-23; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). Specifically, the moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the non-movant] do not establish the absence or presence of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1)(A)-(B). The party opposing a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico*, 132 F.3d at 149) (other citation omitted), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000) (citations omitted). "Rather, the nonmoving party must present 'significant probative evidence tending to support the complaint.'" *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 U.S. Dist. LEXIS 4943, *9 (S.D.N.Y. Mar. 26, 2002) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)).

### 2. *GBL § 349-d(7)*

New York's GBL regulates businesses, including ESCOs, and governs what information must be disclosed to an ESCO's consumers about their rights and responsibilities. *See generally* N.Y. Gen. Bus. L. § 349-d. Plaintiffs allege that their agreements with Defendant violated GBL § 349-d(7), which provides that, "[i]n every contract for energy services and in all marketing materials provided to prospective purchasers of such contracts, all variable charges shall be

clearly and conspicuously identified." Gen. Bus. Law § 349-d(7).  The parties dispute whether a factfinder could reasonably conclude that Defendant's disclosures were sufficiently "clear and conspicuous" to meet the statute's requirements.

The parties appear to agree that the New York Public Service Commission (the "PSC") – the regulatory body that oversees New York's energy market – reviewed Defendant's agreements and approved them, finding that they complied with all applicable regulations and laws, including the requirement that all variable charges be clearly and conspicuously disclosed. *See* Dkt. No. 131-1, Def's Memorandum in Support of Mot. for Sum. J., at 12 (citing Dkt. No. 131-10, Ex. D-1. Scherer Decl., at ¶¶ 19-20); Dkt. No. 133, Pl's Memorandum in Opposition to Def's Mot. for Sum. J., at 8-9.  Nonetheless, the parties dispute whether a court can consider a disclosure's clarity after the PSC has approved and certified it.  To determine whether the agreements were clear and conspicuous, the Court must consider whether GBL § 349 governs the Welcome Letter, Terms, and Disclosure Statement and which of those documents, if any, the Court should consider together as part of one agreement.  The Court addresses each of these issues and then turns to the question of whether Defendant has met its burden of showing an absence of material fact and entitlement to judgment as a matter of law.

### 3. *Whether the Court will "override" the PSC's approval in determining if Defendant's agreements complied with GBL § 349-d(7)*

Defendant argues that Plaintiff is inviting the Court to "override" New York's regulatory system because the PSC has already approved and certified that its contracts comply with Section 349-d(7).  *See* Dkt. No. 131-1 at 12-15.  Defendant primarily relies on the Second Circuit's conclusions in *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88 (2d Cir. 2019), to

support its argument. However, the Court finds that *Richards* is distinguishable and that the GBL affords Plaintiffs a private right of action.

In *Richards*, the plaintiff alleged that the defendant's imposing variable rates following a fixed rate term (referred to as "the Evergreen clause") constituted a breach of contract, unjust enrichment, and unfair and deceptive trade practices under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b(a), among other things. *See Richards*, 915 F.3d at 95. Richards' unfair and deceptive trade practices claim, brought pursuant to CUTPA, are the most analogous to Plaintiffs' GBL claims in this action. The Second Circuit indicated that Richards alleged that "reasonable consumers" would likely interpret the Evergreen clause to mean that the variable rate would reflect the costs of procuring power, plus an appropriate margin to cover legitimate costs and risks. *See id.* at 100. Richards essentially argued that the defendant was required to disclose every factor influencing the variable rate; but the Second Circuit indicated that CUTPA did not impose such a duty. *See id.* at 101. Instead, the court held that CUTPA merely required consumer electricity contracts to explain the rates that customers would pay, including the circumstances under which the rates might change. *See id.* (citing Conn. Gen. Stat. § 16-245o(f)(2)). The Second Circuit noted that Connecticut's Public Utilities Regulatory Authority ("PURA") had approved the Evergreen clause and had found that requiring the defendant to define certain terms – such as "business and market conditions" – in greater detail "would override PURA's certification." *See id.* (citation omitted).

Contrary to Defendant's assertion, the Second Circuit did not conclude that it could not consider whether an ESCO's contract complied with the state's regulations. It merely stated that, requiring the company to disclose *more* information than was specified in the regulations would constitute judicial overreach. In fact, the Second Circuit decided, with respect to

Richards' breach of contract claim, that the terms essentially complied with the regulations. *See generally id.* at 97-100.  Although Defendant appears to contend that the Court cannot consider whether it complied with the state's regulations once the state has certified that it has done so, this is not the holding in *Richards*.

Furthermore, as Plaintiffs argue, the GBL expressly permits an individual to commence an action in the courts if they feel that an ESCO's violation injured them. *See* Dkt. No. 133 at 17.  Specifically, GBL § 349-d(10) provides that "any person who has been injured by reason of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. L. § 349-d(10).  As a result, at least one New York court has considered whether an ESCO's contracts comply with GBL § 349-d, even after the PSC has certified as such, pursuant to GBL § 349-d(10).  *See Simmons v. Ambit Energy Holdings, LLC*, No. 503285/2015, 2016 N.Y. Misc. LEXIS 3954, *10 (N.Y. Sup. Ct. Oct. 19, 2016) (finding that, "[i]nasmuch as individuals have a private right of action under the statute, it cannot be said that such claims are barred under the doctrine of primary jurisdiction.  In fact, any such ruling would effectively nullify the private right of action granted by the legislature in enacting GBL § 349-d(10)").  Therefore, the Court finds that it may consider whether Defendant's contracts violated GBL § 349-d(7)'s requirement that "all variable charges shall by clearly and conspicuously identified." N.Y. Gen. Bus. L. § 349-d(7).

### 4. *Documents governed by GBL § 349-d(7)*

In the Court's August 2017 Order denying Defendant's motion to dismiss, it considered whether the Terms, Disclosure Statement, and Welcome Letter each, on their own, clearly and conspicuously disclosed all variable charges. *See* Dkt. No. 27 at 13.  At that time, the parties

did not dispute whether GBL § 349-d(7) governed each of these documents, nor did they contend that the Court should consider these documents together. *See id.* at 8. In its memorandum supporting its motion for summary judgment, however, Defendant argues that the Welcome Letter is not subject to the GBL's requirements because it is neither a contract nor a marketing material, as it was sent to Plaintiffs after they had already agreed to purchase the products and it was not a contract between them. *See* Dkt. No. 131-1 at 16-17. Defendant further argues that the Court should consider the Terms and the Disclosure Statement together as constituting one contract (the Agreement). *See id.* In response, Plaintiffs point out that the Court already determined in its August 2017 Order that Defendant's written materials must comply with the GBL. *See* Dkt. No. 133 at 15.

With respect to the Welcome Letter, the Court finds that it is neither a contract nor a marketing material. The Welcome Letter is exactly what it says – a letter welcoming new customers to the program and thanking them for using Defendant's services. *See* Dkt. No. 131-6, Ex. B-1, at 2. There are no terms offered in the Welcome Letter to which a party must agree; and, therefore, it is not a contract. Furthermore, the customer receiving the Welcome Letter has already signed up for services with Defendant; and, thus, it is not marketing material. For these reasons, the Court concludes that the Welcome Letter does not have to comply with GBL § 349-d(7).

Regarding the Terms and Disclosure Statement, Defendant points to the first section of the Terms, which provides the following:

> **1. Terms of Service.** These Terms and Conditions together with the Customer Disclosure Statement (defined below), which is incorporated herein by reference, constitute the agreement ("Agreement") between you and [Defendant] Direct Energy Services, LLC . . . "Customer Disclosure Statement" means, as applicable, either the section of the enrollment consent form/letter

>of authorization entitled *'Customer Disclosure Statement'* or the Schedule A accompanying these Terms and Conditions entitled *'Customer Disclosure Statement – Schedule A to Terms and Conditions'*.

*See* Dkt. No. 131-6, Ex. B-1, at 4.

Defendant attached an additional document to the Terms, titled "Direct Energy Customer Disclosure Statement for Electricity or Natural Gas," with the subheading "Schedule A to Terms and Conditions." *See id.* at 8.  This schedule includes the price per kWh for electricity, indicates that it is a fixed rate for a specified number of billing cycles, explains early termination and late fees, and describes the renewal process. *See id.* The Disclosure Statement does not include any information about the agreements that are contrary to those found in Section 1 of the Terms. *See id.* It is well-settled law that "[a] contract may incorporate another document by reference by describing it in such clear and unambiguous terms that its identity can be ascertained beyond reasonable doubt." *Pagaduan v. Carnival Corp.*, 709 F. App'x 713, 715 (2d Cir. 2017) (summary order) (citations omitted). Thus, because the Court can determine beyond a reasonable doubt that the Terms incorporate the Disclosure Statement by reference, the Court finds that those two documents constitute Defendant's "Agreement" with each Plaintiff. Therefore, the issue before the Court is whether the Agreements – constituting the Terms and Disclosure Statement – are so clear and conspicuous that they satisfy GBL § 349-d(7).

### 5. *Satisfaction of GBL § 349-d(7)*

In the Court's August 2017 Order, it addressed what information must be disclosed pursuant to GBL § 349-d(7) and what constituted "clear and conspicuous" disclosure. *See* Dkt. No. 27 at 8-16. In concluding *what* had to be disclosed, the Court held that "Defendant must 'clearly and conspicuously' disclose that it will charge a variable rate per kW[h] after the initial

contract period." *See id.* at 15.  With respect to *how* that information was disclosed, *i.e.*, whether it was clear and conspicuous, the Court cited Black's Law Dictionary defining "[c]onspicuous" as "'clearly visible or obvious.'"  *See id.* at 16 (quoting Black's Law Dictionary 329 (8th ed. 2004)).

In *Mirkin v. Viridian Energy, Inc.*, the District of Connecticut applied the Federal Trade Commission's ("FTC") multi-factor test to determine whether an ESCO's disclosure was sufficiently clear and conspicuous.  *Mirkin* summarized the test as follows:

> "The FTC takes several factors into account in assessing whether a given disclosure meets the standard, namely the placement of the disclosure in an advertisement and its proximity to the claim it is qualifying; the prominence of the disclosures; whether items in other parts of the advertisement distract attention from the disclosure, whether the advertisement is so lengthy that the disclosure needs to be repeated; …; and whether the language of the disclosure is understandable to the intended audience."

*Mirkin v. Viridian Energy, Inc.*, No. 3:15-cv-1057 (SRU), 2016 U.S. Dist. LEXIS 86616, *14 (D. Conn. July 5, 2016) (quoting *United States v. Locascio*, 357 F. Supp. 2d 536, 549 (E.D.N.Y. 2004)).[3]

Additionally, in *Schafer v. Direct Energy Servs., LLC*, the Western District of New York applied these factors to determine whether a disclosure was clear and conspicuous.[4]  *See Schafer v. Direct Energy Servs., LLC*, 481 F. Supp. 3d 141, 147 (W.D.N.Y. 2020), *rev'd on*

---

[3] In its August 2017 Order, this Court declined to rely on *Mirkin*'s holding regarding *what* information must be disclosed.  *See* Dkt. No. 27 at 14.  The Court further concluded that, substantively, the terms and conditions in the contract at issue in *Mirkin* were "clearly more pronounced" than those in this case.  *See id.* at 16.  However, the Court took no position, as it does now, on the issue of whether these factors would apply to determine whether a disclosure was clear and conspicuous, or – in other words – *how* that information is disclosed.  *See generally id.*

[4] Notably, Richard Schafer, the plaintiff in the Western District of New York case, is also an Intervenor-Plaintiff in this case.  Schafer's claims against Defendant in the Western District arise from variable rates used to calculate his gas bill, whereas his claims in this case pertain to variable rates used to calculate his electricity bill.  *See* Dkt. Nos. 150, 151.

*other grounds*, 845 F. App'x 81 (2d Cir. 2021). Although the Second Circuit reversed on other grounds, it did not conclude that this standard was inappropriate. *See generally Schafer v. Direct Energy Servs., LLC*, 845 F. App'x at 82. On remand, the trial court again relied on these factors. *See Schafer v. Direct Energy Servs., LLC*, No. 19-CV-6907-FPG, 2021 U.S. Dist. LEXIS 236251, *7 (W.D.N.Y. Dec. 8, 2021). For these reasons, the Court expands upon its formerly articulated definition of "clearly visible or obvious" to include the FTC multi-factor test in determining whether Defendant's disclosures were clear and conspicuous, as GBL § 349-d(7) requires.

To support its argument that the Agreements clearly and conspicuously disclosed the information about the variable rates, Defendant points to Plaintiffs' deposition testimonies. *See* Dkt. No. 131-1 at 18. With respect to Plaintiff Martin Forte, the originally named plaintiff in this action, he admitted during his deposition testimony that he had a contract with Defendant and his name was on it, but his wife made "the switch" from another company to Defendant, had all of the communications with Defendant, and Plaintiff never talked to anyone who worked for Defendant. *See* Dkt. No. 131-4, Ex. A-1, M. Forte Dep., at 9:17-24. Plaintiff admitted that he never looked at his contract or any correspondence with Defendant before he filed this lawsuit. *See id.* at 9:25-10:6. The only marketing material Plaintiff could recall seeing was one commercial, at least four years prior to his deposition, that aired on television, but the commercial did not prompt him to enroll with Defendant. *See id.* at 10:9-18. Plaintiff testified that he never looked at Defendant's website before the date of his deposition, never looked at his contract or any correspondence with Defendant before the date of the deposition, nor had he looked at any marketing materials other than that one commercial before he testified. *See id.* at

10:19-11:10.  In fact, Plaintiff conceded that he had "nothing to do with [the lawsuit] other than support [his] wife." *See id.* at 9:8-14.

Concetta Forte, Plaintiff Martin Forte's wife, testified at her deposition that she handles all household decisions about energy supply, shops for energy, communicates with energy suppliers, compares rates, and reviews their correspondence. *See* Dkt. No. 131-4, Ex. A-2, C. Forte Dep., at 18:11-19:11.  She explained that Plaintiff does not review the bills or any correspondence and he simply did not know of Defendant or the lawsuit until the day before his deposition testimony.  *See id.* at 19:9-24.  When asked about her communications and experience with Defendant, Mrs. Forte testified that she believed that the fine print in the contract was misleading to customers.  *See id.* at 29:7-10.  However, she also admitted that she looked at the contract but "not in detail where [she] could understand a lot of it." *See id.* at 29:17-18.  She testified that, when she got the contract, she filed it but did not review it.  *See id.* at 29:19-30:2.  When asked to look at the language about variable rates in the Terms during her deposition, Mrs. Forte scanned it and stated that "it's awful wordy." *See id.* at 49:10-16.  Mrs. Forte then read the relevant sentence, which provided, "[a]fter the initial term, during the renewal term your rate per kilowatt hour as well as the daily fee will both be variable," and she indicated that she understood that sentence.  *See id.* at 50:2-6.  She further stated that she understood the section on the Disclosure Statement indicating what the price for electricity would be, that it would be fixed for twelve monthly billing cycles, and that the agreement would automatically renew for successive month-to-month periods "at [Defendant's] standard variable rate plan as per the price applicable to the terms and conditions." *See id.* at 50:10-51:9.

The Intervenor Plaintiffs similarly admitted that they did not read their contracts with Defendant; but, if they had, they would have understood that their electricity would be charged

at a variable rate following their one-year fixed terms.  *See generally* Dkt. No. 131-4, Ex. A-5, Schafer Dep., at 48:19-49:8; Ex. A-6, Baglione Dep., at 107:25-109:1; Ex. A-7, Aurelia Dep., at 83:9-16.  Intervenor Plaintiff Schafer, for example, testified that he did not recall ever seeing a copy of his contract with Defendant.  *See* Dkt. No. 131-4, Ex. A-5, at 38:7-16, 41:4-7, 50:9-51:4.  During his deposition, Intervenor Plaintiff Schafer immediately saw the section in the Terms related to prices that he would pay upon questioning and explained that, when he read it all, he could see the reference to variable rates.  *See id.* at 41:11-42:25.  His concessions are summarized in the following deposition testimony:

> Q. So if you had read this document, you could have understood that at the end of the fixed rate, your rate would go variable, right?
>
> A. Yes.
>
> …
>
> Q. Having read this today, you understand that when your fixed rate expired, you would automatically renew on a month-to-month variable rate, right?
>
> …
>
> THE WITNESS:  I understand that that's what it says, yes.
>
> …
>
> Q. So if you had received this and read it in 2016, you would have known that your rate would vary month to month, right?
>
> A. Yes.
>
> …
>
> Q: … And you would have also seen that that variable rate would start January 28, 2017?
>
> A.    Yes.

*See id.* at 47:8-11, 48:19-49:2, 53:10-19.

Intervenor Plaintiff Baglione similarly testified that, if he had read the contract documents thoroughly, he would have seen the multiple references that, after the initial term, his service would change to a variable rate; and he admitted he would have understood what that meant. *See* Dkt. No. 131-4, Ex. A-5, at 107:25-109:1. He also testified that, if he were looking to see what happened when his initial term expired, he would have seen it relatively quickly. *See id.* at 66:19-24. Intervenor Plaintiff Aurelia also testified after reading the contract documents at the deposition that he understood that, at the end of his fixed rate term, his price would become variable if he did not renew or terminate his service. *See* Dkt. No. 131-4, Ex. A-7, at 42:7-16, 44:24-45:18.

Plaintiffs' testimonies, which are not contradicted anywhere in the evidence, reveal that they did not read their contracts with Defendant; and, once they had read those contracts, they understood that, after their fixed rate term ended, they would be billed at a variable rate. Thus, based on the foregoing testimony, the Court finds that Defendant has shown that the language in its Agreements was clear and conspicuous and not in violation of GBL § 349-d(7).

In Plaintiffs' memorandum of law, they merely attach a picture of one page of the Terms, asserting that it is "worth a million words" and stating that "[n]othing has changed" since the motion to dismiss because the variable charges "have not magically become bolded, underlined, highlighted, larger, or set off in any way." *See* Dkt. No. 133 at 12-13. Plaintiffs do not point to any other evidence to establish that the language about the variable rates was not clear and conspicuous, nor do they cite to any requirements in the GBL or from the Second Circuit mandating that the language be underlined, bolded, capitalized, highlighted, larger, or otherwise set off from the other text. *See id.* at 13-16. Furthermore, Plaintiffs do not attach any

evidence that disputes their own deposition testimonies in which they each admitted that they had not read their contracts with Defendant when they received them and that, upon reading those contracts, they understood that Defendant would charge them variable rates after their fixed rate term ended.  *See id.*  As such, the Court finds that there is no genuine issue of material fact as to whether the language in Plaintiffs' Agreements with Defendant was clear and conspicuous or if the Agreements violated GBL § 349-d(7).  Accordingly, the Court grants Defendant's motion for summary judgment and dismisses both Plaintiff's and the Intervenor-Plaintiffs' complaints against it.

### B. The remaining motions pending before the Court

Since the Court has granted Defendant's motion to dismiss Plaintiffs' complaints against it, Plaintiffs' motions for class certification, *see* Dkt. Nos. 83, 121, are moot.  *See Richards*, 246 F. Supp. 3d at 560.  The Court also finds that Defendant's motion for judgment on the pleadings against Intervenor-Plaintiffs Schafer and Baglione, *see* Dkt. No. 117, is also moot because they responded to Defendant's motion for summary judgment, which addressed all of the issues raised in the motion for judgment on the pleadings.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 131, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 117, is **DENIED as moot**; and the Court further

**ORDERS** that Plaintiffs' motions for class certification, *see* Dkt. Nos. 83, 121, are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: December 29, 2021
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge